IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

KEN NOWLIN                                                                                                PETITIONER

V.                                                                                CAUSE NO. 3:07CR108-GHD-SAA-2

UNITED STATES OF AMERICA                                                                         RESPONDENT

**BRIEF IN SUPPORT OF MOTION TO VACATE
AND SET ASIDE GUILTY PLEA, CONVICTION AND SENTENCE**

**I. INTRODUCTION**

Upon advice of counsel, and against his wishes, Petitioner Ken Nowlin plead guilty to Count One of the superseding indictment in this case. The indictment charged Petitioner with conspiracy to violate 18 U.S.C. §§ 371 and 666. Petitioner is innocent of those charges and his attorney, Mr. Anthony Farese, was ineffective in advising him to plead guilty without doing any investigation or ensuring that Petitioner understood the law in relation to the facts of his case. Instead of doing either of these things, Mr. Farese scared, intimated and coerced Petitioner into pleading guilty and thereby deprived him of his right to the effective assistance of counsel guaranteed to him by the Sixth Amendment to the United States constitution.

Petitioner was not guilty of the § 371 conspiracy charge because in order for the crime of conspiracy to be complete, one of the conspirators must have preformed an overt act that demonstrated that the conspirators had an objective intent to knowingly and willfully commit a crime. The overt act alleged here involves the way Petitioner paid Mr. Massey beginning in September 1997 through July 2004. Exhibit 18, p. 4-6. During this time Petitioner paid Mr. Massey the way Mr. Massey told him he could be paid. Mr. Massey asked for a raise that he thought he was entitled to and Petitioner arranged for him to be given the raise. In order to

simplify the accounting and bookkeeping problems that were involved in paying Mr. Massey, Petitioner arranged for "Total Plan Services to issue two checks on a monthly basis." Exhibit 18, p. 5.

Petitioner did not pay Mr. Massey the way he did so that Mr. Massey would somehow influence the rates Lafayette County paid on its insurance policy. The only reason Mr. Massey asked for the raise was to be paid more money, money he thought he was entitled to. Petitioner and Mr. Massey never discussed what Mr. Massey might do for Petitioner in return for Petitioner giving him the raise. Petitioner did not give Mr. Massey the raise so that he "would be influenced and rewarded in connection with the Lafayette County Employees Health Insurance contract. . . ." Exhibit 18, p. 3. Petitioner and Mr. Massey both knew there was no way Mr. Massey could influence the rates Lafayette County paid for its insurance and it would have been foolish for them to even talk about something like that. If Petitioner violated 18 U.S.C. § 666 when he gave Mr. Massey the raise, he did not know he was violating the statute, or committing some type of crime, when he agreed to pay Mr. Massey the way he did. Petitioner certainly had no objective intent to knowingly and willfully violate the statute or commit a crime.

Petitioner had two defenses to the § 666 charge that would have exonerated him completely. The indictment charged Petitioner with corruptly accepting monthly health insurance commissions from Total Plan Services with the intent that his co-defendant, Mr. Massey, would be influenced in connection with the insurance policy Lafayette County had for its employees. Petitioner did not pay Mr. Massey corruptly and Mr. Massey could not, and did not, have any influence on the way the Lafayette County insurance premiums increased during the time he was a member of the Layafette County Board of Supervisors. Furthermore, § 666(c)

states that "[t]his section does not apply to bone fide salary, wages, fees, or other compensation paid, or reimbursed in the usual course of business." Petitioner paid Mr. Massey in his usual course of business. Petitioner never tried to disguise his payments to Mr. Massey. Mr. Massey did not know how Petitioner was paying him. Petitioner and Mr. Massey never even discussed the way Petitioner paid him. Petitioner was not guilty of the conspiracy charge and had two complete defenses to the § 666 charge. The Government could not have proven that Petitioner was guilty of either charge if Mr. Farese had allowed Petitioner to exercise his right to be tried before a jury.

Mr. Farese is an experienced lawyer. He is very competent. He and his brother are known nationally for obtaining acquittals for their clients. Why did Mr. Farese never even consider that Petitioner might be innocent? Why did Mr. Farese fail to interview even one witness who knew how and why Petitioner paid Mr. Massey the way he did? Why did Mr. Farese tell Petitioner he could not talk to Mr. Massey or his attorney? Why did Mr. Farese not talk to either one of them? Why did Mr. Farese make Petitioner take a polygraph test that was conducted by an FBI agent? Why did Mr. Farese make Petitioner testify before the grand jury? Why did Mr. Farese coerce Petitioner into pleading guilty? These are questions that this Court, in the interest of justice, should require Mr. Farese to answer at some point in time.

## II. THE LAW

### a. Guilty Pleas

It is well established that a guilty plea is valid only if it is made voluntarily, knowingly, and intelligently. *Henderson v. Morgan,* 426 U.S. 637 (1976); *Boykin v. Alabama,* 395 U.S. 238 (1969). A valid guilty plea must represent "a voluntary and intelligent choice among the

alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31(1970).  A guilty plea cannot be voluntary unless the accused has been advised of the true nature of the charges against him.  *Marshall v. Lonberger,* 459 U.S. 422, 436 (1983).   In order for an accused to enter a valid guilty plea,  he  must have understood "the law in relation to the facts" concerning the charge to which he plead.  *McCarthy v. United States,* 394 U.S. 459, 466 (1969).  In determining whether a guilty plea is voluntary, this Court must consider " all of the relevant circumstances surrounding it." *Brady v. United States,* 397 U.S. 742, 749 (1970).

To prevail on his ineffective assistance of counsel claim, Petitioner  must show that his counsel's performance was deficient and that the deficiency caused him to plead guilty. *Strickland v. Washington,* 466 U.S. 668, 687 (1984).  Petitioner must show "that there is a reasonable probability that, but for counsel's (deficient performance), he would not have pleaded guilty and would have insisted on going to trial."  *Hill v. Lockhart,* 474 U.S. 52, 59  (1985).

To establish that Mr. Farese's performance was deficient, Petitioner must show that his representation "fell below an objective standard of reasonableness."  *Strickland,* 466 U.S. at 688. This Court must "judge the reasonableness" of what Petitioner claims Mr. Farese should have done before he advised Petitioner to plead guilty.    *Id.* at 690.  In *Strickland,* the court specifically addressed  "failure to investigate" claims, explaining that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.*   The *Strickland* court, however,  explained, that "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation" and that  "counsel has a duty to

make reasonable investigations *or* to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691. (emphasis in original).

In *U.S. v. Cavitt*, 550 F.3d 430 (5th Cir. 2008)*,* the Court of Appeals for the Fifth Circuit, quoting *Herring v. Estelle,* 491 F.2d 125, 128 (5th Cir.1974), held that an attorney must

> actually and substantially assist his client in deciding whether to plead guilty. It is his job to provide the accused an understanding of the law in relation to the facts. The advice he gives need not be perfect, but it must be reasonably competent. His advice should permit the accused to make an informed and conscious choice. In other words, if the quality of counsel's service falls below a certain minimum level, the client's guilty plea cannot be knowing and voluntary because it will not represent an informed choice. And a lawyer who is not familiar with the facts and law relevant to his client's case cannot meet that required minimal level.

550 F.3d at 440-41. *See also O'Hara v. Wigginton,* 24 F.3d 823, 828 (6th Cir.1994) ("[A] failure to investigate, especially as to key evidence, must be supported by a reasoned and deliberate determination that investigation was not warranted.").

The Fifth Circuit has also held that:

> When a guilty plea is entered, it is defense counsel's duty to assist actually and substantially the defendant in deciding whether to plead guilty and to ascertain whether the plea is entered knowingly and voluntarily. . . .Counsel must be familiar with the facts and the law in order to advise the defendant meaningfully of the options available. . . . This includes the responsibility of investigating potential defenses so that the defendant can make an informed decision. . . . Counsel's advice need not be the best, but it must be within the realm of competence demanded of attorneys representing defendants in criminal cases at that time. (citations omitted).

*Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (5th Cir. 1981).

On numerous occasions, the Fifth Circuit has held that an attorney's failure to interview crucial witnesses constitutes "constitutional deficient representation." *Bryant v. Scott*, 28 F.3d

1411, 1418 (5th Cir. 1994). *See also, Thomas v. Lockhart,* 738 F.2d 304, 308 (8th Cir.1984) (finding ineffective assistance where counsel's "investigation of the case consisted of reviewing the investigative file of the prosecuting attorney" and holding that the "investigation fell short of what a reasonably competent attorney would have done"); *Nealy v. Cabana,* 764 F.2d 1175, 1177 (5th Cir. 1985)(an attorney must engage in a reasonable amount of pretrial investigation and "at a minimum, ... interview potential witnesses and ... make an independent investigation of the facts and circumstances in the case."); *Gray v. Lucas,* 677 F.2d 1086, 1093 n. 5 (5th Cir.1982) (noting that attorney's failure to investigate crucial witness may constitute inadequate performance).

The United States Supreme Court has recently held in two death penalty cases that attorneys were ineffective in failing to investigate and discover mitigating evidence and that their failure to conduct a proper investigation prejudiced the defendants to the extent that the Court granted the defendants new trials. See, *Porter v. McCullum*, 130 S.Ct. 447 (2009) and *Wiggins v. Smith*, 539 U.S. 510 (2003).

### b. Conspiracy

Petitioner was charged with conspiracy in violation of 18 U.S.C. § 371. A conviction for conspiracy requires the government to prove beyond a reasonable doubt that two or more persons reached an agreement to commit a crime and that one of the conspirators committed an overt act in furtherance of the agreement. *United States v. Ortiz-Loya*, 777 F.2d 973, 981 (5th Cir.1985). Further more, "in order to sustain a judgment of conviction on a charge of conspiracy to violate a

federal statute, the Government must prove at least the degree of criminal intent necessary for the substantive offense itself." *United States v. Feola*, 420 U.S. 671, 686 (1975); *United States v. Wieschenberg*, 604 F.2d 326, 331 (5th Cir. 1979).

In discussing the protections defendants are entitled to before they "may be convicted of conspiracy in an undertaking involving both legal and illegal activity," the Fifth Circuit, in *United States v. Wieschenberg*, supra, held that:

> We begin with the premise that all conspiracy law is directed only at persons who have intentionally agreed to further an illegal object. To convict, the government must prove that there was an agreement to accomplish an illegal act. It is not enough for it merely to establish a climate of activity that reeks of something foul. The law requires proof that the members of the conspiracy knowingly and intentionally sought to advance an illegal objective. Involvement by individuals in a clandestine agreement that appears suspicious may be ill advised or even morally reprehensible, but, without proof of an illegal aim, it is not criminal. "Conspiracy is an inchoate offense, the essence of which is an agreement to commit an unlawful act." *Iannelli v. United States*, 420 U.S. 770, 777, 95 S.Ct. 1284, 1289, 43 L.Ed.2d 616 (1975). (footnotes omitted).

*Wieschenberg,* 604 F.2d at 331-32.

The conspiracy statute provides in part that:

> If two or more persons conspire ... to commit any offense against the United States, ... and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 371. The statute explicitly provides that for the crime of conspiracy to be complete, one of the conspirators must have performed an overt act to bring about the object of the conspiracy. The government must prove that the overt act was performed in furtherance of the agreement's illegal objective. *United States v. Sink,* 586 F.2d 1041, 1050 (5th Cir. 1978). The overt act must also demonstrate that the conspirators had an objective intent to knowingly and willfully commit a crime. *United States v. Small,* 472 F.2d 818, 819 (3rd Cir. 1972).

### c. Paying someone corruptly

Petitioner was charged with conspiracy to violate 18 U.S.C. § 666 which prohibits a person from "**corruptly** giv[ing] anything of value to any person, with intent to influence or reward an agent of an organization or of a State, local or Indian tribal government, or any agency thereof, in connection with any business, transaction or series of transaction of such organization, government, or agency involving anything of value of $5,000 or more." (emphasis added).

An act is done "corruptly" if it is done voluntarily and intentionally to bring about either an unlawful result or a lawful result by some unlawful method, with a hope or expectation of either financial gain or other benefit to oneself or a benefit of another person. *U.S. v. Aguilar,* 515 U.S. 593, 616-617 (1995)(Justice Scalia, dissenting). See also, *United States v. Impastato,* 543 F.Supp.2d 569, 577 (E.D.La. 2008)(To act "corruptly" is generally defined as acting "voluntarily and intentionally with an improper motive or purpose to be influenced or rewarded ... involv[ing] conscious wrongdoing, or as it sometimes expressed, a bad or evil state of mind." 1-27A Modern Federal Jury Instructions-Criminal § 27A.02 (West 2007)".

### d. Paying someone a bona fide salary in the usual course of business

In drafting § 666, Congress made clear that not every situation that might to some be considered an act of bribery should be subjected to federal oversight and punishment. Congress did not intend § 666 to reach normal business dealings and a restriction on the reach of § 666 was built into the statute which provided that , "[t]his section does not apply to bona fide salary, wages, fees or other compensation paid, or expenses paid or reimbursed, in the usual course of business." 18 U.S.C. § 666(c). *In U.S. v. Rooney ,*37 F.3d 847 (2nd Cir. 1994), the Court of Appeals for the Second Circuit held that:

8

> Congress apparently did not intend § 666 to reach normal business dealings: § 666 was amended in 1986 to add a new subsection (c), which states that § 666 "does not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business." The committee report discussing new subsection (c) states that its purpose is "to avoid [§ 666's] possible application to acceptable commercial and business practices" and that § 666 "does not seek to constrain lawful commercial business transactions." *See* H.R.Rep. 797, 99th Cong., 2d Sess. 30 & n. 9 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6138, 6153 & n. 9.

*Rooney,* 37 F.3d at 854.

### III. HOW THE LAW RELATES TO THE FACTS OF THIS CASE

#### a. The Conspiracy Charge

Mr. Farese failed to advise Petitioner that in order for him to be found guilty of conspiracy if he went to trial, the Government would have to present evidence showing that he paid Mr. Massey and eventually gave him a raise with the intent that Mr. Massey would influence the rates that Lafayette County paid on its insurance policy and that Petitioner paid him and gave him the raise with the intent that Petitioner would benefit from any rate increases that occurred due to Mr. Massey's influence. Mr. Farese failed to advise Petitioner that the Government would have to prove that he and Mr. Massey reached an agreement to accomplish an illegal act (Mr. Massey improperly influencing the rates Lafayette county was paying on its insurance policy) with the intent that the illegal act would achieve an illegal objective (that Petitioner would profit by it and make more money). Petitioner and Mr. Massey did not agree to do anything illegal when Petitioner hired Mr. Massey as a consultant and later gave Mr. Massey the raise he asked for. When Petitioner gave Mr. Massey the raise, he had no intent to commit a crime and he did not even know what he would have had to do to violate 18 U.S.C. § 666. Mr. Farese never discussed the statute with Petitioner and never even talked to him about the

evidence the Government would have to present at trial to show that he conspired with Mr. Massey to violate 18 U.S.C. § 666.  All Mr. Farese ever told Petitioner was that he was guilty because he paid Mr. Massey more than $5000.00 a year, something Petitioner obviously did.  Had Mr. Farese advised Petitioner as to how the conspiracy law related to the facts of his case, Petitioner would have realized that he was not guilty of conspiring to do anything illegal with Mr. Massey and he would not have let Mr. Farese coerce him into pleading guilty

### b.  Paying Mr. Massey corruptly

Prior to accepting Petitioner's guilty plea, Judge Glen Davidson advised Petitioner that before he could be convicted of conspiracy to violate 18 U.S.C. § 666 the Government would have to prove beyond a reasonable doubt that he "and at least one other person made an agreement to commit the crime of **corruptly** accepting monthly health insurance commission payment with the intention that County Supervisor Gary Massey would be influenced and rewarded in connection with the Lafayette County employees health plan insurance contract as charged in the indictment." Exhibit 19, p.8. (emphasis added).  Mr. Farese failed to advise Petitioner that in order for the Government to prove that he paid Mr. Massey corruptly, the Government would have to prove that he intentionally paid Mr. Massey with the purpose that Petitioner would be rewarded by Mr. Massey's unlawful conduct and that he paid Mr. Massey the way he did with an evil state of mind.  Had Mr. Farese advised Petitioner that he had to have paid Mr. Massey corruptly in order for the Government to convict him of violating 18 U.S.C. § 666, Petitioner would have realized that he was not guilty, and he would not have let Mr. Farese coerce him into pleading guilty.

### c. Paying Mr. Massey in Petitioner's usual course of business.

Mr. Massey was an insurance agent who began working with Petitioner approximately five years before he was elected supervisor of Lafayette County in 1995. Mr. Massey wrote the Lafayette County employees life and health insurance policy. Once he learned that he could no longer receive commissions on the account, he turned it over to Petitioner. Total Plan Services serviced the account and because Petitioner was Total Plan Services' General Agent, he received a four percent commission on all of the accounts Total Plan Services had with Mr. Massey.

In April 1996, Mr. Massey told Petitioner he could work for Petitioner as a consultant as long as he did not do any work on the Lafayette County account. Petitioner told him he would hire him if he moved all of his accounts over to him. Mr. Massey agreed to do this as they renewed and Petitioner hired him. Petitioner agreed to pay Mr. Massey approximately what he was making on the accounts he turned over to Petitioner.

In October 1999, Mr. Massey asked for a raise. He knew the rates had gone up on the Lafayette County account and that Petitioner was making more money off of that account than he had been. Mr. Massey wanted to be paid more. Petitioner agreed to give Mr. Massey the raise and in order to avoid any problems with him, Petitioner instructed Total Plan Services to transfer the eight percent commission on Lafayette County Petitioner was being paid off of statement A and add it to statement B.[1]

During Petitioner's guilty plea hearing, Judge Davidson asked if there was a factual basis for Petitioner's guilty plea. Mr. David Sanders explained how Mr. Massey began to work for Petitioner and how Petitioner paid him. Mr. Sanders told Judge Davidson that Petitioner told

---

[1] See footnote 4 in the Motion to Vacate.

Total Plan Services to pay him in two separate commission statements to "disguise the payments as consulting fees." Exhibit 19, p. 16.

Petitioner and Mr. Massey never tried to disguise anything in their business relationship. Petitioner's staff knew how he paid Mr. Massey and if Petitioner and Mr. Massey had thought they were doing some illegal, and thought they should disguise the way Petitioner paid him, Petitioner would have paid Mr. Massey in cash.

Mr. Massey worked for Petitioner. He was a good insurance agent. Petitioner hired Mr. Massey, in part, because he did not want Mr. Massey to compete against him in the insurance business in Northeast Mississippi. Mr. Massey did help Petitioner's business. He was good at what he did.

The salary Petitioner paid Mr. Massey was "bona fide" from the first time he paid him until the last time he paid him. Petitioner paid him, like he paid the other agents who worked for him as consultants, in his usual course of business.

The statute Petitioner was charged with violating "does not apply to bona fide salary, wages, fees or other compensation paid, or expenses paid or reimbursed, in the usual course of business." 18 U.S.C. § 666(c). Mr. Farese failed to advise Petitioner that in order for him to be found guilty of violating 18 U.S.C. § 666 if he went to trial, the Government would have to prove that he did not pay Mr. Massey a bona fide salary in his usual course of business. Had Mr. Farese advised Petitioner that the Government could not convict him of paying Mr. Massey the way he did if he paid him a bona fide salary in his usual course of business, Petitioner would have realized that he was not guilty, and he would not have let Mr. Farese coerce him into pleading guilty.

### d. The voluntariness of Petitioner's plea

For a guilty plea to be voluntary, it must be knowingly and intelligently entered. Petitioner's plea was not voluntary because he was not aware of the nature of the charge that was brought against him. Petitioner did not know that in order to convict him of conspiracy the Government would have to prove that he paid Mr. Massey the way he did with the intent that Mr. Massey would influence the rates Lafayette County paid on it insurance policy and that Petitioner paid him the way he paid him with the intent that Petitioner would benefit financially from the way he paid him. Mr. Farese never explained what the Government would have to prove in order to convict Petitioner of conspiracy. Petitioner's plea could not have been voluntary unless he knew what the Government would have to prove in order to convict him of conspiracy.

Petitioner's plea was not voluntary because he was not aware that in order for the Government to convict him of violating 18 U.S.C. § 666, the Government would have to prove that he paid Mr. Massey corruptly and with the intent Mr. Massey would influence the rates Lafayette County paid on its insurance policy. Petitioner did not know that in order for the Government to prove he paid Mr. Massey corruptly, the Government would have to prove that he purposely paid Mr. Massey the way he did with the intent that he would benefit financially from Mr. Massey's illegal conduct and that he paid Mr. Massey with an evil state of mind. Petitioner knew that Mr. Massey could not influence the rates Lafayette County paid on its insurance policy and he knew that his intent in paying Mr. Massey the way he did was not to try to get Mr. Massey to influence those rates. Mr. Farese, however, never explained that the Government would have to prove those things in order to convict Petitioner of corruptly paying Mr. Massey. Petitioner's plea could not have been voluntary because he did not know that in

order for the Government to convict him if he went to trial, the Government would have to prove that he paid Mr. Massey corruptly and with the intent that Mr. Massey would influence the rate Lafayette County paid on its insurance policy and also prove that Petitioner paid Mr. Massey corruptly and with the intent that he would make more money off of the Lafayette County account if he paid Mr. Massey the way he did.

Petitioner's plea was not voluntary because he was not aware that in order for the Government to convict him of violating 18 U.S.C. § 666, the Government would have to prove that the salary he paid to Mr. Massey was not a bona fide salary and that he did not pay Mr. Massey in his usual course of business. Petition knew, along with all of his office staff, that he paid Mr. Massey a bona fide salary and that he paid him the way he did in his usual course of business. Mr. Farese never even mentioned 18 U.S.C. § 666(c) to Petitioner during the time he was representing him. Petitioner had no idea that such a defense to a § 666 charge existed. Petitioner's plea could not have been voluntary because he did not know that in order for the Government to convict him of violating 18 U.S.C. § 666, the Government would have to prove that he did not pay Mr. Massey a bona fide salary in the usual course of his business.

In order for Petitioner's guilty plea to be valid, it must have been a voluntary and intelligent choice among alternative courses of action open to him. In this case, Petitioner had no choice about what he did. Mr. Farese told him he was guilty because he paid Mr. Massey more than $5,000.00 a year and that he had no choice but to plead guilty. Mr. Farese never advised Petitioner as to what the Government would have to prove in the event he exercised his right to be tried by a jury. Petitioner was not aware of the nature of the charges that were brought against him. Petitioner certainly did not understand the law in relation to the facts of his case.

This Court should consider all the circumstances surrounding Petitioner's guilty plea. Such consideration should leave this Court with the firm conclusion that Petitioner's guilty plea was not voluntary.

### e. The Restitution

Either two or three days before Petitioner was sentenced, Mr. Farese told Petitioner to bring him a check in the amount of $275,942.79. Mr. Farese told Petitioner that he was going to have to pay that amount of restitution to make it easier for him to convince Judge Mills to sentence Petitioner to probation. Petitioner tried to explain that he would have gotten that amount of money, his four percent override, from Total Plan Services on the Lafayette County account no matter who received the eight percent commission on the account. He told Mr. Farese that even if Mr. Massey had told Total Plan Services at some point in time that he no longer wanted Petitioner to have the Lafayette County account, and had given it to someone else, like Johnny Morgan, Petitioner would have still received his four percent override. Petitioner could not understand why he had to pay over $275,000.00 in restitution because he had earned that money and paid taxes on it. Petitioner, however, delivered Mr. Farese a check in the amount he requested and Mr. Farese, thereafter, sent the Government a check in that amount made out to the United States District Court.

Mr. Farese failed to provide Petitioner with effective assistance of counsel in insisting that Petitioner deliver him the check he told Petitioner to bring him and the Government should not benefit from Mr. Farese's ineffectiveness. Upon finding that Petitioner did not enter a voluntary and intelligent guilty plea, this Court should direct the Government to return the $275,942.79 to Petitioner.

## CONCLUSION

Petitioner Ken Kowlin was not guilty of the charges brought against him by the United States Government.  Mr. Massey might have been guilty of violating a state law but Petitioner was not guilty of conspiracy to violate 18 U.S.C. § 666.  The charges brought against Petitioner and Mr. Massey resulted from an investigation that was initiated by Johnny Morgan, their main competitor in the insurance business.  Once Petitioner realized that the investigation might result in criminal charges being brought against him, Petitioner retained Mr. Anthony Farese to defend him against any charges that might result from the investigation.   Instead of defending Petitioner, Mr. Farese made him take a polygraph conducted by an FBI agent and testify before a federal grand jury.  Mr. Farese did not interview even one witness and did not discuss the case with Mr. Massey or his attorney.  Mr. Farese even told Petitioner he could not talk to either of them.  Mr. Farese told Petitioner he could not listen to or have any contact with the one person who was telling Petitioner that no matter what happened he had to tell the truth.  Mr. Farese convinced Petitioner's brother that Petitioner would be going to prison for 75 years if he did not plead guilty.  Believing Mr. Farese, Petitioner's brother told him that he had to plead guilty.  Petitioner believed Mr. Farese too and felt that he had no choice but to plead guilty.  Under the circumstance, Petitioner could not have entered a voluntary, knowing and intelligent plea of guilty.

This Court should, therefore, vacate and set aside Petitioner's guilty plea, conviction and sentence and grant him a new trial.  This Court should also direct the Government to return the $275,942.99 in restitution that Petitioner paid the Government.  Should this Court find that Petitioner is not entitled to the relief he seeks on the record as it now stands, Petitioner moves

this Court for an evidentiary hearing and for such further and additional relief the Court determines would be just and proper.

                Respectfully Submitted,

                KEN NOWLIN

                By: <u>Cynthia A. Stewart</u>
                CYNTHIA A. STEWART

SUBMITTED BY:

CYNTHIA A. STEWART, P.A. (MSB #7894)
2088 Main Street, Suite A
Madison, Mississippi 39110
Telephone: (601) 856-0515
Facsimile: (601) 856-0514

PRECIOUS T. MARTIN, SR., ESQ. (MSB #10619)
Precious T. Martin, Sr. & Associates, PLLC
P. O. Box 373
Jackson, Mississippi 39205
Telephone No. (601) 944-1447
Facsimile: (601) 944-1448

**CERTIFICATE OF SERVICE**

I, the undersigned attorney for the Petitioner herein, do hereby certify that the above and foregoing is being filed with the Clerk of this Court by electronic filing and will be served via e-mail by the Clerk of this Court to the following:

> John Marshall Alexander, Esq.
> john.alexander@usdoj.gov
>
> David Anthony Sanders, Esq.
> David.a.sanders@usdoj.gov
>
> This the 29th day of December 2009.

/s/ Cynthia A. Stewart
Cynthia A. Stewart