**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**WESTERN DIVISION**

**KEN NOWLIN**                                                                                              **MOVANT**

v.                                                                                                      No. 3:07CR108-M-A

**UNITED STATES OF AMERICA**                                                                  **RESPONDENT**

**MEMORANDUM OPINION**

This matter comes before the court on the motion by Ken Nowlin to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The government has responded to the motion, and Nowlin has replied. The matter is ripe for resolution. For the reasons set forth below, the instant motion to vacate, set aside, or correct Nowlin's sentence will be denied.

**Facts and Procedural Posture[1]**

Ken Nowlin and Gary Massey were indicted by the Grand Jury for the Northern District of Mississippi in a 41-count indictment on 31 May 2007. Pursuant to a plea agreement with the government, Nowlin testified before the Federal Grand Jury for the Northern District of Mississippi on 28 June 2007. A superseding indictment was returned that same day, charging both Massey and Nowlin in 53 counts. On 27 July 2007, Nowlin plead guilty to Count One of the superseding indictment and agreed to continue his cooperation with the government. Nowlin and his attorney Anthony L. Farese met several times with government prosecutors and agents and he was prepared to testify at trial against Gary Massey.

At the time of his indictment, Nowlin had been in the insurance business for almost three

---

[1]The court has taken the facts and procedural posture almost entirely from the government's response to the present motion. The facts in the case are not in dispute, only the implications drawn from those facts.

decades. Grand Jury Transcript, p. 4. He specialized in brokering health care plans to various companies and governmental entities. He had 60 or 70 local agents who brokered their clients' health care plans through him, with the agent receiving an 8% commission from the insurance company in addition to a 4% "override" that the insurance company paid to Nowlin. Grand Jury Transcript, pp. 5-6. Gary Massey was one of those agents. In 1994 or 1995, Gary Massey sold Lafayette County, Mississippi its health care plan, receiving two-thirds (2/3) of the 12% commission on that plan. That is, Massey received 8% of the face amount of the premium and Nowlin received 4%. Grand Jury Transcript, p. 7. Massey was then elected to the Lafayette County Board of Supervisors in 1994; he took office in January 1995. The month before Massey took office, Nowlin and Massey discussed the fact that Massey could not sit on the Board and receive commissions as the agent for the county's health insurance coverage. Grand Jury Transcript, p. 8. Massey's portion of the commission on the Lafayette County plan was at that time about $11,000 per month, and the commissions Massey and Nowlin shared over the period of time from January 1996 until the county placed its coverage with another company in 2004 was about $827,000. Grand Jury Transcript, p. 19. Massey and Nowlin came to an agreement that Massey would continue to receive money equal to his commission, but they would call it a "consulting fee" since he could not receive the commission directly. Nowlin would become the sole agent of record on the Lafayette County plan, and Massey would receive his 8% from Nowlin instead of from the insurance company. Grand Jury Transcript, p. 8. In the Federal Grand Jury the following exchange occurred:

> AUSA Tom Dawson: Now the reason that Massey wanted to no longer be the agent of record is that he knew that, as the supervisor, he could not share any commissions from the contract of the county in which he serves on the Board?

>NOWLIN: That's right.

>DAWSON: Of course, you knew that as well?

>NOWLIN: Yes, sir.

Grand Jury Transcript, p. 9. Nowlin agreed to replace Massey's commission check from the insurance company with an equal check written on his own business account each month. When asked if he would have paid Massey the "consulting fee" had it not been for the Lafayette County plan, Nowlin responded under oath that he would not have done so. Grand Jury Transcript, p. 10. Indeed, it became obvious that the money paid to Massey was simply a commission when he demanded a $3,000 per month increase in the "consulting fee" to match his share of an increase in the Lafayette County health insurance plan's premium. Grand Jury Transcript, pp. 12-16. Nowlin testified under oath before the federal grand jury that he increased Massey's "consulting fee" approximately $3,000 per month because Massey threatened to take the business away if he did not. Grand Jury Transcript, p. 15. Nowlin had a clear understanding: Massey was threatening to take the Lafayette County health care contract as well as others and move them to a different company. Nowlin stood to lose his 4% override on the Lafayette County plan as well as several other plans. Grand Jury Transcript, p. 16.

Nowlin and Massey made approximately $827,000 in commissions between January 1996 and mid-2004 when the contract was not renewed by the Lafayette County Board of Supervisors. Grand Jury Transcript, p. 19. Massey had a clear conflict of interest – to keep the plan for Lafayette County because it made a great deal of money for Gary Massey and Ken Nowlin. Both men knew they had to conceal the scheme in order to make it work.

Tony Farese had his Ken Nowlin take an FBI polygraph to see if he honestly believed that Gary Massey had permission to receive his commission by simply calling it a consulting fee. The polygrapher found Nowlin to be deceptive when he answered "no" to the question: "Did you and Gary discuss how to hide the Total Plan Service commission?" An experienced defense attorney like Tony Farese would recognize then that the race to the courthouse was on – that if his client wanted to negotiate the best deal (including a downward departure), he would have to make a plea deal first. At the urging of counsel, Nowlin signed a plea agreement, cooperated with the government, testified in the grand jury about his and Massey's criminal conspiracy, and pled guilty a month before Massey. The government filed a motion for downward departure in recognition of Nowlin's cooperation.

When Nowlin deviated from the advice of his attorney he began to have trouble. As Larry Nowlin said in his affidavit (defense Exh. 11), "Ken tried to tell Judge Mills he was not guilty because there were mitigating circumstances. Ken told Judge Mills that he was misled by an elected official (Massey). When Ken said this, Farese pulled on Ken's coat to the extent that it indicat[e]d to me and everyone in the courtroom that Farese was trying to get Ken to shut up." These statements undermined his acceptance of responsibility. The court then sentenced him to the upper end of the guidelines range despite the government's 5K1.1 motion.

Nowlin ended Mr. Farese's representation and obtained other counsel to prosecute his appeal, attacking the 30-month sentence as unreasonable. The Fifth Circuit Court of Appeals affirmed the judgment.

Tony Farese's letter to Nowlin dated September 28, 2007, and Nowlin's letter of October 3, 2007, to Mr. Farese shed light on the level of representation Nowlin received. Those letters

are attached to Nowlin's motion as Exhibits 22 and 23. Mr. Farese noted that Mr. Nowlin appeared to be ". . . attempting to backtrack and deny that (he) had committed a crime." Farese explained that the only option at that juncture would be an attempt to withdraw the plea, but that to do so would be against his best legal advice. Farese said that Nowlin had already met with government prosecutors on June 5, 2007, under Rule 11 of the Federal Rules of Criminal Procedure, and during that meeting had admitted his guilt to the crimes contained in the 41-count indictment pending against him. Farese pointed out that the plea agreement called for a plea of guilty to a § 371 conspiracy which carried a statutory maximum of 5 years, which would cap the offense at 5 years, less than the sentence provided by the United States Sentencing Guidelines. Farese also cautioned Nowlin that after signing the plea agreement he had testified under oath before the Federal Grand Jury, admitting his guilt and implicating his codefendant Gary Massey. Finally, Farese reminded Nowlin that he had stood before the United States District Court for the Northern District of Mississippi on Friday, July 27, 2007, telling the court under penalty of perjury that he agreed with the Factual Basis read in open court. In light of these facts, Farese thought it would be "ludicrous" for Nowlin to attempt to withdraw his plea of guilty and assert his innocence. Farese did, however, offer Nowlin that option, noting that withdrawal of the plea would ultimately be within the court's discretion – and that a trial would afford Massey the opportunity to testify against Nowlin. Nowlin would then have to testify at trial as to his innocence after having sworn under oath he was guilty – without perjuring himself. Those would have been perilous waters, indeed. Nowlin responded in an October 3, 2007, letter, stating that "After much thought and careful consideration, I do not wish to change my guilty plea or my plea agreement . . . ."

## Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a movant must show that his attorney gave constitutionally deficient performance and that the deficiency caused actual prejudice to his legal position. *Strickland v. Washington*, 466 U.S. 668 (1984). Under the deficiency prong of the test, the movant must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. The court must analyze counsel's actions based upon the circumstances at the time – and must not use the crystal clarity of hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). The movant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). To prove prejudice, a movant must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir.), *cert. denied*, 116 S.Ct. 557 (1995); *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997).

## Nowlin's Claims

Nowlin has made several claims for relief in his § 2255 motion. First, Nowlin believes that he is actually innocent because he did not have the mental state to act corruptly – based upon his belief that Gary Massey who had a letter from the attorney for Lafayette County essentially authorizing him to continue receiving his commission, provided they called it a consulting fee. Nowlin thus says that he believed the transactions to be permissible under Mississippi law. Next he argues that Mr. Farese did not tell him that the language of 18 U.S.C. § 666 specifically

protects bona fide salaries and commissions paid in the ordinary course of business. In addition, he argues that neither he nor Massey were in a position to influence the insurance rates at issue, a fact he believes would defeat the government's theory that Nowlin and Massey acted together in order to increase insurance payments, which would increase the commissions. Finally, Nowlin argues that neither he nor Massey took an overt act to further the conspiracy, a fact which would prevent the government from proving that charge.

## Discussion

Nowlin casts all of his claims as instances of ineffective assistance of counsel. Nowlin's arguments would be plausible, except every one of them is undermined by his testimony before the Grand Jury, the contents of various documents he signed under penalty of perjury, and his testimony at the change of plea hearing.

### Nowlin's Plea of Guilty Was Knowingly Intelligently, and Voluntarily Given

Nowlin states that he did not realize that relabeling the commissions from insurance premiums as "consulting fees" was against the law and, as such, he could not have acted "corruptly" in doing so. As part of this argument he points to a letter Massey received from Lafayette County's attorney purportedly saying that such payments were legal. Nowlin admits that he never actually saw the letter. In any event, at his Change of Plea Hearing, Nowlin testified that he, indeed, knew that the payments were contrary to Mississippi law:

> Q [the Court]: Of course, an element of the offense is that you knew that it was a violation of state law for this elected supervisor to profit from contracts through the entity that he is elected to serve, Lafayette County, Mississippi. You knew that was a violation of state law, didn't you, Mr. Nowlin?
>
> A:     Yes, sir.

Transcript of Change of Plea Hearing, p. 20-21.  As Mr. Nowlin has previously testified under oath that he knew his payments to Mr. Massey were against Mississippi law, he can hardly testify in good faith now to the opposite.  Nowlin, therefore, made the payments corruptly.

As another part of this argument, Nowlin states that

> "[t]he salary [he] payed to Mr. Massey was 'bona fide' from the first time he paid him until the last time he paid him.  Petitioner paid him, like he paid the other agents who worked for him as consultants, in the usual course of business."

Nowlin's Brief in Support of Motion to Vacate and Set Aside Guilty Plea, Conviction, and Sentence, Page 12.  He relies upon the law that 18 U.S.C. § 666 "does not apply to bona fide salary, wages, fees or other compensation paid, or expenses paid or reimbursed, in the usual course of business."  18 U.S.C. § 666(c).  While his statement of the law is correct, that law does not apply to the facts of this case.

Bona fide means, "made, done, presented, etc., in good faith; without deception or fraud," or "authentic; true."  Dictionary.com, http://dictionary.reference.com/browse/bona+fide.  Mr. Nowlin's testimony about this topic shows that the payments were in no way bona fide.  Nowlin has repeatedly stated in these § 2255 proceedings that he paid Mr. Massey a total of about $551,000.00 as a consultant – indeed, that he paid Massey, "like he paid the other agents who worked for him as consultants, in the usual course of business."  Nowlin's Brief in Support of Motion to Vacate and Set Aside Guilty Plea, Conviction, and Sentence, Page 12.  However, during his testimony before the Grand Jury, Nowlin had something quite different to say:

> Q [AUSA Tom Dawson]: Now, concerning the Lafayette County health care contract, did Mr. Massey do any servicing or any work on that?
>
> A: No, sir.
>
> Q: Who did?

A: I did it.

Q: During this time, did he do any substantial or consulting work?

A: Very little.

Q: Would it have been enough to –

A: No, sir.

Q: – to sustain the 8 percent of $827,000?[2]

A: No, sir.

Q: You anticipated my question, didn't you?

A: Yeah.

Transcript of Grand Jury Testimony, p. 20-21. Nowlin has conceded that he paid Massey $551,000.00 to do "very little" consulting work – and that the work was not "enough to . . . sustain" the payment. No businessman pays a person $551,000.00 to do "very little" work – not if he wants to stay in business. Such a payment is not "in the normal course of business;" nor is it authentic, true, or done in good faith. By Nowlin's own testimony – given before the Grand Jury under penalty of perjury – the payments were not bona fide. Certainly, he did not pay Massey for consulting. That fact, alone, would establish that the payments were a fraud and a deceit.

In addition to these incriminating admissions, given under oath and upon penalty of

---

[2] The parties repeatedly referred to the amounts of money as "8 percent" and "4 percent" of $827,000.00, which is mathematically incorrect. Nowlin was to receive 4 percent of the Total Care premiums as a commission, while Massey would receive 8 percent of the premiums. The entire commission over the time period at issue amounted to 12 percent of the premiums – which totaled about $827,000.00. Of that total, Nowlin received 33% (about $276,000.00) and Massey received 67% (about $551,000.00).

perjury, Nowlin testified that he and Massey knew that, as an elected official, Massey could no longer receive his commissions from the Total Care premiums. Grand Jury Transcript, p. 9-10. For this reason, they arranged for Massey to continue receiving his commission fees disguised as consulting fees. *Id.* The "consulting fee" was obviously nothing more than a disguised commission, because when the Total Care premium went up, Massey demanded an increase in his "consulting fee" that exactly matched the 8 percent increase in premium – the amount of money he would have received if he had still been agent of record on the Total Care contract with Lafayette County. Grand Jury Transcript, p. 12-17.

Another part of Nowlin's challenge to his conspiracy conviction is his belief that neither he nor Massey could have influenced either the rates for the Total Care plan or the decision by Lafayette County to go with Total Care or another company. He is apparently arguing that neither he nor Massey could have changed the premiums (and thus the commissions) they received from the Total Care account. This argument is completely without merit. First, their ability to influence rate changes does not alter the fact that Massey received a large sum of money as commissions from an insurance contract with the county he was elected to represent. This is a huge conflict of interest – and against the law of Mississippi. Nowlin knew this and helped Massey keep the commissions, anyway. Massey's benefit was keeping his commissions in spite of the law prohibiting that very thing. Nowlin's benefit was, at a minimum, keeping Massey's lucrative accounts, including the Lafayette County account. Grand Jury Transcript, p. 12-17. Even if Massey was not the sole decision-maker as to which health insurance policy Lafayette County held, Nowlin obviously believed Massey could hurt his business by making someone else agent of record for *other* accounts. *Id.* In addition, Massey could certainly *try* to

influence the Board of Supervisors, and he could cast his vote against keeping Total Care, if he so chose.  His ability to exert influence, whether it ultimately proved effective or not, is part of the equation.  If Nowlin did not believe Massey could affect the county's decisions, then it is unlikely he would have entered into the agreement in the first place.

Finally, Nowlin's argument that neither he nor Massey performed an overt act in furtherance of the conspiracy is without merit.  They arranged to have the commission payments funneled through Nowlin's accounts and relabeled as "consulting fees."  They increased the amount of "consulting fees" to match the new commission in proportion to the increase in Total Care premiums.  Nowlin had Total Care split the commission checks to make it easier to pay Massey and to keep his books from month to month.  The two met or spoke on multiple occasions to discuss the agreement and keep it running smoothly.  Nowlin actually made the payments to Massey.  These are all acts in furtherance of the conspiracy, and each is sufficient to sustain a conspiracy conviction.  This claims is without substantive merit.

### Tony Farese's Advice

Nowlin argues that Tony Farese failed to explain the nature of the charges against him, and, had he understood those charges, he would not have pled guilty.  As discussed above, the facts in the record directly contradict Nowlin's present factual allegations.  He pled guilty to violating 18 U.S.C. § 666(a)(2), which requires the government to prove that Nowlin corruptly gave, offered, or agreed to give anything of value to any person with intent to influence or reward an agent of a local government involving anything of value of $5,000.00 or more.  18 U.S.C. § 666(a)(2).  As discussed above, Nowlin has admitted in sworn testimony that he corruptly (knowingly in violation of Mississippi law), gave over $5,000.00 to Gary Massey (an

agent of a local government) in connection with a transaction (an insurance contract) of a local government (Lafayette County, Mississippi), and he intended to influence or reward him (with disguised commissions) for keeping Lafayette County's insurance business with Nowlin's company. Nowlin, under penalty of perjury, has admitted these facts in proceedings before the Grand Jury and also in testimony and submissions to this court. The court cannot conceive of a way for Nowlin to come back now and testify to diametrically opposed facts – without perjuring himself.

As Nowlin had admitted each and every element of the offense, the only sound advice Mr. Farese could have given him was to plead guilty. Mr. Farese negotiated a plea agreement in which Nowlin pled guilty to Count One of a 41-count indictment, the other 40 counts would be dismissed, Nowlin would serve no more than five years in prison, and would pay one third of the restitution. This is a good outcome, indeed, given the number of charges and sentence Nowlin faced had the government proceeded with all charges. Indeed, had Mr. Farese advised Nowlin to seek to withdraw his plea under those circumstances, he could well have faced discipline from the Mississippi Bar Association. Nowlin's admissions made his conviction all but certain had he proceeded to trial. Mr. Farese's actions and advice were sound, and Nowlin suffered no harm from Farese's representation. On the contrary, Nowlin's sentence was far less than the one he likely would have received if he had proceeded to trial.

As a final note, if Nowlin had prevailed on the present motion, it would have been a Pyrrhic victory, at best. He has requested that his plea agreement be invalidated and that he be permitted to proceed to trial before a jury. As part of his plea agreement was the dismissal of 40 of the charges against him, it appears he would proceed to trial on all 41 counts of the

indictment.  Given his admissions as to each element of guilt, his conviction on all counts is likely.  Should he be convicted and sentenced based upon a guilty verdict on even half of the counts, he could be sentenced to *far* more than the 30 months he received and served based upon his guilty plea.  At that point, it appears that he could be incarcerated again, with credit for time already served.  Given the mountain of evidence against him, the slim chance of victory at trial, and the possibility of reincarceration, Nowlin's pursuit of a jury trial at this juncture, even if the court were to permit it, would be imprudent.

Therefore, Nowlin meets neither the deficiency nor the prejudice prongs of the ineffective assistance of counsel test.  *Strickland v. Washington*, 466 U.S. 668 (1984).  As such, Nowlin's claims of ineffective assistance of counsel are without merit and will be dismissed.  A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED,** this the 29th day of March, 2013.

 /s/ Michael P. Mills
CHIEF JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI